UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES ATCHISON,

       Petitioner,                          Hon. Janet T. Neff

v.                                          Case No. 1:12-CV-557

KENNETH McKEE,

       Respondent.
_____/


**REPORT AND RECOMMENDATION**

This matter is before the Court on Atchison's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Atchison's petition be **denied**.


**BACKGROUND**

As a result of events which occurred on December 14, 2009, Petitioner was charged with: (1) conspiracy; (2) armed robbery; and (3) two counts of felonious assault. (Plea Transcript, June 4, 2010, 3-10). Petitioner subsequently entered into a plea agreement pursuant to which he agreed to plead guilty to armed robbery in return for which the other charges would be dismissed. (Tr. 3-10). Petitioner was sentenced to serve 20-40 years in prison. (Sentencing Transcript, July 15, 2010, 13). Petitioner subsequently moved in the trial court, without success, to withdraw his

1

guilty plea. (Dkt. #12). Petitioner later moved in the Michigan Court of Appeals for leave to appeal, asserting the following claim:

> I. Defendant's state and federal constitutional rights were violated when he was coerced into taking a plea.

The Michigan Court of Appeals denied Petitioner leave to appeal "for lack of merit in the grounds presented." *People v. Atchison*, Case No. 302634, Order (Mich. Ct. App., June 3, 2011). Asserting the same claim, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Atchison*, Case No. 143355, Order (Mich., Oct. 24, 2011). On June 5, 2012, Petitioner initiated the present action in which he asserts the aforementioned claim.

## STANDARD OF REVIEW

Atchison's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

2

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court

3

unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8 (Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with

4

respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

A guilty plea is more than an admission that the accused performed certain acts, but is instead "a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Following a guilty plea "nothing remains but to give judgment and determine punishment." *Id.* By pleading guilty a criminal defendant surrenders several important constitutional rights, including (a) the privilege against compelled self-incrimination; (b) the right to trial by jury; and (c) the right to confront one's

5

accusers. *Id.* at 243. To ensure that a criminal defendant is not improperly deprived of these (and other) rights, to be valid a guilty plea must be made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

The *Boykin* Court identified certain rights (identified immediately above) which a criminal defendant waives by pleading guilty. While the *Boykin* Court made clear that waiver of these (and other) rights cannot be assumed, the Court did not hold that a guilty plea is valid only where a criminal defendant was first notified as to each and every right he would be waiving by pleading guilty. *Boykin*, 395 U.S. at 243-44. In fact, less than one year after its *Boykin* decision the Supreme Court, in *Brady v. United States*, 397 U.S. 742 (1970), upheld the validity of a guilty plea even though the defendant had not been specifically advised of the rights identified by the *Boykin* Court. *Id.* at 743-58. With respect to its *Boykin* decision, the Court clarified its significance stating that "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747 n.4.

Accordingly, as other courts have since recognized, neither *Boykin* nor any other Supreme Court authority requires that a criminal defendant be specifically advised of any particular rights before his guilty plea can be deemed constitutionally valid. *See, e.g., Threadgill v. Galaza*, 2006 WL 2084165 at *3 (E.D. Cal., July 25, 2006) ("specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea;" if the "record demonstrates that a guilty plea is knowing and voluntary, no particular ritual or showing on the record is required"); *United States v. Toles*, 1992 WL 129284 at *3 (9th Cir., June 4, 1992) ("*Boykin* does not require that the trial judge specifically

6

list each right waived by a defendant who pleads guilty"); *Carter v. Brooks*, 2001 WL 169584 at *6-7 (D. Conn., Feb. 13, 2001) (the Supreme Court has "in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea" and "a guilty plea will not be invalidated simply because of the district court's failure. . .to enumerate one or more of the rights waived by the defendant as the result of such a plea"); *United States v. Smith*, 1990 WL 92601 at *2 (9th Cir., July 5, 1990) (the standard is not whether the trial judge specifically articulated certain rights, but whether "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

Accordingly, the relevant question is not whether the trial judge specifically articulated or identified for Petitioner a list of the various rights he would be surrendering by pleading guilty. Rather, as noted above, the question is whether Petitioner's decision to plead guilty was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." The plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Wilkerson v. Jones*, 109 Fed. Appx. 22, 23 (6th Cir., Aug. 6, 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Determining whether a guilty plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

Petitioner argues that he is entitled to relief because "his attorney made an unfulfilled promise of a minimum sentence of 21 to 35 months." The terms of the plea bargain were detailed on the record. (Plea Hearing, June 4, 2010, 2010, 3-10). Specifically, Petitioner agreed to plead guilty to armed robbery in return for the dismissal of the two counts of felonious assault and the conspiracy charge. (Tr. 3-10). Petitioner testified that he understood the charges against him, as

7

well as the possible penalties that could be imposed if convicted. (Tr. 3-10). Specifically, Petitioner testified that he understood that armed robbery was punishable by "up to life in prison." (Tr. 4-5). With respect to the possible sentence which Petitioner might receive, the judge explained to Petitioner that it would depend on various factors including his yet-to-be completed sentencing guidelines score as well as "the legal arguments" advanced by the parties. (Tr. 5-6). Petitioner testified that he understood this. (Tr. 6).

Petitioner testified that he executed an Advice of Rights form detailing the various rights he would be surrendering if he pleaded guilty. (Tr. 6-7). Petitioner testified that he spoke with his attorney concerning this particular matter and understood "each and every" right he was surrendering by choosing to accept the plea bargain. (Tr. 6-7). Petitioner testified that his decision to plead guilty was voluntary and that his decision was not based on "any other promises, threats or inducements" other than the terms of the plea agreement which were "set forth on the record." (Tr. 6). Petitioner's counsel concurred that "there are no other agreements" in addition to the plea bargain as stated on the record. (Tr. 6). Petitioner made absolutely no mention of any promises or statements by his attorney regarding the possible sentence he might receive. Considering the totality of the circumstances, any claim that Petitioner's guilty pleas were not offered voluntarily, knowingly, and intelligently is without merit.

The Court also notes that Petitioner has failed to establish the existence of any promise by his attorney that he would receive a minimum sentence between 21 and 35 months.[1]

---

[1] In support of this argument, Petitioner has submitted an affidavit in which he asserts that his trial counsel "told him if he pled guilty he would receive a minimum sentence between 21 and 35 months." (Dkt. #14). The self-serving nature of this affidavit is apparent. Petitioner has also submitted a copy of what he asserts is his trial counsel's notes allegedly demonstrating the existence of the promise in question. (Dkt. #14). This document is not authenticated and contains no indication that it was prepared by Petitioner's counsel. Moreover, even if it is assumed that the document was prepared by Petitioner's counsel, such does not support the argument that counsel promised Petitioner that he would

8

Even if Petitioner could establish the existence of the promise in question, he is nevertheless bound by his in-court statements regarding the specifics of the plea bargain and his understanding thereof. *See, e.g., Pugh v. Klee*, 2013 WL 4718340 at *3 (E.D. Mich., Sept. 3, 2013) (citing *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999). Moreover, to the extent that Petitioner argues that he did not understand his counsel's advice or otherwise misunderstood the consequences of his plea, such does not form the basis for relief as "a trial court's proper plea colloquy ordinarily cures any misunderstandings that a defendant may have about the consequences of a plea." *See*, *e.g.*, *Watkins v. Lafler*, 517 Fed. Appx. 488, 496 (6th Cir., Mar. 21, 2013); *Ramos*, 170 F.3d at 566 ("[i]f we were to rely on [a defendant's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his lea, despite his own statements during the plea colloquy (which he now argues were untruthful) indicating the opposite").

Accordingly, the Court concludes that the denial of these claims by the Michigan Court of Appeals was neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, the court's decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, the undersigned recommends that this particular claim be denied.

---

receive a minimum sentence of 21-35 months. At most, this document suggests that counsel performed a rough calculation of Petitioner's sentencing guidelines score and determined that such was in the 21-35 month range. Such hardly constitutes the expression of a "promise" to Petitioner that he would receive a particular sentence.

9

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Atchison's petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: November 26, 2013  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge